UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VERNON LEE TRAVIS, III, <br> TDCJ No. 01932961, <br><br> Petitioner, <br><br> v. <br><br> LORIE DAVIS, Director, <br> Texas Department of Criminal Justice, <br> Correctional Institutions Division, <br><br> Respondent. | § § § § § § § § § § § § § § | SA-17-CA-0738-XR |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Vernon Lee Travis, III's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket Entry "DE" 1), Petitioner's Memorandum in Support (DE 4), Respondent's Answer (DE 12), and Petitioner's Traverse (DE 15).[1] Also before the Court are Petitioner's Motion for Discovery (DE 9), Respondent's Response in Opposition (DE 17), and Petitioner's Reply (DE 18) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied discovery and a certificate of appealability.

## I. Background

In May 2014, Petitioner pleaded guilty to burglary of a habitation with intent to commit aggravated assault with a deadly weapon and elected to have a jury assess his punishment. DE 14-8 at 44 (Plea), 48 (Election of Punishment). Following the conclusion of sentencing proceedings, Petitioner was sentenced to fifty-five years of imprisonment. DE 14-8 at 74

---

[1] Petitioner has paid the applicable filing fee for this cause (DE 1) and is represented by counsel in these proceedings.

(Verdict), 75 (Judgment); *State v. Travis*, No. B13-637 (198th Dist. Ct., Kerr Cnty., Tex. May 8, 2014). The facts presented at the sentencing proceeding were accurately summarized by the Fourth Court of Appeals on direct appeal:

> On September 5, 2013, two men wearing bulletproof vests kicked in the front door and entered the home located at 347 Madrona, Kerrville, Texas with their handguns drawn. The male occupant locked himself inside a bedroom, while the female occupant and her child remained in the living room with one of the gunmen. [Petitioner] banged on the bedroom door yelling for the man to come out and pay the money he owed "Big Mike." The man fired a shot through the bedroom door, and [Petitioner] fired two to three shots through the door into the bedroom. [Petitioner] and the other gunman then fled in a blue vehicle, but were intercepted by a DPS trooper who gave chase. After throwing the guns out the window, they abandoned the vehicle and ran into the woods. [Petitioner] surrendered to the officers. The officers recovered the two handguns and apprehended the other suspect, Timothy Scott Pugh. Both men were indicted for burglary with intent to commit aggravated assault with a deadly weapon.
>
> After the jury was impaneled in [Petitioner]'s case, he entered a plea of guilty to the charged offense. After the State presented its evidence, the jury was instructed to return a verdict finding [Petitioner] guilty, which it did, and trial then proceeded into the punishment phase before the jury. Several witnesses testified during punishment, including the two complainants, [Petitioner] and members of his family, and Dr. John Roache, a psychiatrist. Dr. Roache reviewed [Petitioner]'s recent medical records diagnosing him with post-traumatic stress disorder ("PTSD") and related polysubstance use disorder and drug induced mood disorder and testified that he agreed with the diagnosis based on his evaluation of [Petitioner] and [Petitioner]'s account of his military service in Iraq. The jury recommended punishment be assessed at 55 years' imprisonment, and the trial court imposed a sentence in accordance with the jury's verdict.

*Travis v. State*, 2015 WL 6876830, No. 04-14-00560-CR (Tex. App.—San Antonio, Nov. 10, 2015, pet. ref'd).

Petitioner's conviction and sentence were affirmed on direct appeal, and the Texas Court of Criminal Appeals (TCCA) refused his petition for discretionary review on February 3, 2016. *Id.*; *Travis v. State*, No. 1602-15 (Tex. Crim. App.). On April 4, 2017, Petitioner filed a state habeas corpus application challenging the constitutionality of his state court conviction and

2

sentence, which the TCCA later denied without written order on August 2, 2017. DE 14-12 at 13 (petition); DE 14-9 (cover); *Ex parte Travis*, No. 86,928-01 (Tex. Crim. App.).

Petitioner filed the instant federal petition the day after his state habeas petition was denied by the TCCA. DE 1 at 15. In the petition, Petitioner raises two grounds for relief: (1) he was denied the effective assistance of trial counsel by counsel's failure to object to the administration of mood-altering medication to Travis while testifying; and (2) trial counsel was also ineffective for failing to conduct an independent investigation of the ballistics evidence presented by the State.

## II. Petitioner's Discovery Motion

To support his second claim for relief, Petitioner asks the Court to order ballistics testing on certain firearms, cartridges, and material related to his underlying conviction. According to Petitioner, there is "no scientific basis for concluding that [he] ever fired a gun;" thus, he contends ballistics testing would contradict the State's theory that he fired a weapon inside the complainant's home. After careful consideration, the Court denies the motion because good cause has not been shown for conducting discovery.

Rule 6(a) of the Rules Governing Section 2254 Proceedings provides that a party may conduct discovery if the judge, in the exercise of his discretion and for good cause shown, grants leave to do so. A petitioner demonstrates "good cause" under Rule 6(a) "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (internal quotation marks omitted). As discussed in greater detail below, Petitioner has not sought discovery with respect to a specific factual allegation which would

entitle him to relief. Because the record in this case is more than sufficient to adjudicate the issue before the Court, additional discovery is unwarranted.

Moreover, if a claim has been adjudicated on the merits by a state court, "a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). In *Pinholster*, the Supreme Court clarified that, except for the narrow exceptions contained in § 2254(e)(2), a habeas petitioner is precluded from further factual development in federal court and must rely on the evidence presented to the state court when challenging a state court finding. *Id*. at 181-82 (explaining that § 2254(d)(1) "requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at the time, i.e., the record before the state court."). As the Court explained, § 2254(d)(1) review "focuses on what a state court knew and did," such that "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id*.

Here, Petitioner's allegations were adjudicated on the merits in state postconviction proceedings and, thus, are subject to review under § 2254(d). As a result, any extra-record evidence from a ballistics expert concerning these claims would be inadmissible. *Ryan v. Gonzales*, 568 U.S. 57, 75 (2013) (citing *Pinholster*, 563 U.S. at 181-82); *Clark v. Thaler*, 673 F.3d 410, 416-17 (5th Cir. 2012) (stating that, in light of *Pinholster*, courts should consider "only the record that was before the state habeas court"). Petitioner's discovery request is therefore denied.

### III. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain

federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### IV. **Merits Analysis**

Petitioner raises two ineffective-assistance-of-trial-counsel (IATC) claims concerning counsel's performance at the sentencing phase of his trial. Specifically, Petitioner argues counsel was ineffective for failing to: (1) object to the bailiff administering unsolicited medication to Petitioner while testifying which altered his mood and demeanor; and (2) conduct an independent investigation of the ballistics evidence presented by the State. Both of these claims were raised during Petitioner's state habeas proceedings and rejected by the TCCA. As discussed below, Petitioner fails to demonstrate the state court's rejection of the claims was contrary to, or an unreasonable application of, Supreme Court precedent. Federal habeas relief is therefore denied on each claim.

#### A. **The *Strickland* Standard of Review**

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

In determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-

6

89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). As the Supreme Court explained, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. For this reason, every effort must be made to eliminate the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.") (citations omitted). Accordingly, there is a strong presumption that an alleged deficiency "falls within the wide range of reasonable professional assistance." *Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because this showing of prejudice must be "rather appreciable," a mere allegation of prejudice or the possibility of a different outcome is not sufficient to satisfy the prejudice prong of *Strickland*. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). As the Supreme Court explained: "[T]he question in conducting *Strickland*'s prejudice analysis is *not* whether a court

7

can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel [had] acted differently." *Richter*, 562 U.S. at 111 (emphasis added) (citing *Wong v. Belmontes*, 558 U.S. 15, 27 (2009)). Rather, the "likelihood of a different result must be substantial, not just conceivable." *Id.* at 112.

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, this Court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Pinholster*, 563 U.S. at 190); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (same). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards, but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

## B. <u>The Administration of Medication</u> (Claim 1)

Petitioner's first IATC claim alleges counsel was ineffective for failing to object when Petitioner was given unsolicited medication by the bailiff during his testimony. According to Petitioner, his medication was involuntary, and "caused a devastating change in his demeanor" from sad and remorseful to argumentative and uncaring. Petitioner contends this change resulted in a larger sentence because he went from being a sympathetic defendant in the eyes of the jury to a cold and unremorseful one without the jury being given an explanation for the change in

8

behavior. Aside from being misleading, however, Petitioner's allegation fails because he has not demonstrated that the state court's rejection of this claim was unreasonable.

To start, Petitioner's brazen depiction of the medication as being "unsolicited" and "involuntarily administered" is not only contradicted by the trial court record, but by Petitioner's own supporting evidence presented during his state habeas proceedings. Petitioner submitted the affidavits of both trial counsel in support of the allegations raised in his state habeas petition. Both affidavits show it was Petitioner who requested the medication:

> [Petitioner] began to speak about "Ramadan" and the situation that was occurring in Iraq while he was there in the military. As he began to speak about several of his friends being killed during an incident, [Petitioner] screamed out loud and began to cry uncontrollably. He turned to the side with his head down, kind of cowering, and yelled out for his medication.

DE 14-12 at 70 (affidavit of Bryan Orihel).

> During [Petitioner]'s testimony, he was very remorseful and very emotional. At one point during his testimony he began to cry uncontrollably. During this very emotional time, [Petitioner] waived to the bailiff who was in the courtroom and asked for his medication.

DE 14-12 at 73 (affidavit of Shawn Brown).

The trial record similarly reflects that Petitioner voluntarily requested the medication from the bailiff:

> COUNSEL: A little while ago, you took some medication. You had the bailiff come over and give you some medication. What was that medication?
>
> PETITIONER: I'm not 100 percent of what the name of it is.
>
> COUNSEL: What's the purpose?
>
> PETITIONER: Just calms me down, just kind of.
>
> COUNSEL: Did it work? Are you calmer?
>
> PETITIONER: Yeah, I'm fine. Yes, sir.

9

4 RR 86-87.[2] As a result, counsel cannot be faulted for failing to object to "unsolicited" medication because the medication *was* solicited—Petitioner specifically requested it. Any objection by counsel would therefore be frivolous, and counsel cannot be considered deficient for failing to pursue futile or frivolous objections. *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (counsel cannot be deficient for failing to press a frivolous point); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding that "counsel is not required to make futile motions or objections").

In addition to showing it was Petitioner who requested medication from the bailiff, the above testimony further demonstrates that counsel inquired about the medication in front of the jury. Petitioner also testified he first sought counseling through the Veterans Administration a few months after the instant offense occurred, was diagnosed with PTSD just prior to trial, and was given Vistaril for his PTSD and Zoloft for drug-induced mood disorder and depression. At closing, counsel clarified for the jury that Petitioner "took some medication which helped him calm down a little bit and that's what it's for." 4 RR 202. Thus, contrary to Petitioner's assertion, counsel did inquire into the medication and the jury was given an adequate explanation for the alleged change in Petitioner's demeanor. He therefore fails to establish counsel was deficient under the first prong of *Strickland*.

Finally, even assuming counsel was deficient in not investigating the medication issue further, Petitioner fails to demonstrate that he was prejudiced under the second prong of *Strickland*. Testimony established that Petitioner and his accomplice, wearing body armor and brandishing firearms, kicked in the front door of a home occupied by a man, woman, and small child, pointed the weapons at them, and fired several shots in the home. To mitigate this violent

---

[2] "RR" refers to the Reporter's Record of Petitioner's punishment trial, and is preceded by volume number and followed by page numbers.

act, counsel attempted to present Petitioner as a remorseful and sympathetic defendant who has struggled with PTSD and substance addiction since returning from his service in Iraq. Petitioner now contends the medication he took caused a "devastating" change in his demeanor from a sympathetic to an unsympathetic defendant which caused the jury to assess a much heavier sentence. But Petitioner provides no credible evidence that his alleged change in demeanor caused the jury to ignore the other mitigating evidence about his background and service, much less that it caused the jury to find him unsympathetic and impose a harsher sentence.[3] Again, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S at 112. Petitioner has not made this showing.

In sum, Petitioner has failed to demonstrate that the TCCA's rejection of his first allegation on the merits during the course of Petitioner's state habeas corpus proceeding was either (1) contrary to or involved an unreasonable application of the Supreme Court's *Strickland* standard, or (2) based on an unreasonable determination of the facts in light of the evidence presented in Petitioner's state habeas corpus proceeding. Consequently, federal habeas relief is denied on Petitioner's first allegation.

C.  **Expert Ballistics Testimony** (Claim 2)

In his second claim for relief, Petitioner asserts counsel was ineffective for failing to conduct an independent investigation of the ballistics evidence presented by the State. According to Petitioner, ballistics evidence was a crucial issue at Petitioner's trial—who fired shots during the burglary, the order of the shots fired, and where the shots were fired. Petitioner

---

[3] Petitioner states that the affidavits submitted by his trial attorneys affirmed that "several of the jurors thought that [Petitioner] was cold and remorseful on the stand." Neither affidavit makes such a statement. Indeed, the only evidence he does present on this issue comes from a person who allegedly overheard trial counsel state to Petitioner's family that jurors told him the sentence was long because of Petitioner's cold demeanor. DE 14-12 at 81 (affidavit of Jeanna Carlton). As inadmissible double-hearsay, however, this statement has little, if any, persuasive value.

contends the evidence on this issue was "hopelessly conflicted," and that counsel should have found an expert to demonstrate he did not fire *any* shots inside the complainant's home. This allegation was raised, and rejected, during Petitioner's state habeas proceedings. The TCCA's denial of relief was not an unreasonable application of *Strickland* because counsel's actions were neither unreasonable nor prejudicial.

Under *Strickland*, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. 466 U.S. at 699. In order to establish that counsel was rendered ineffective by virtue of a failure to investigate, a convicted defendant must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have revealed and how it would have altered the outcome of the case. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). In particular, complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what the witness would have testified are largely speculative. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (citing *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986)). Thus, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Strickland*, 466 U.S. at 699. A "conscious and informed decision on trial tactics and strategy is not a permissible basis for a claim of ineffective assistance of counsel unless the strategy was so poor that it robbed the defendant of any opportunity to get a fair trial." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

In this case, Petitioner does not state with specificity what a ballistics investigation would have revealed or how it would have altered the outcome of the case. Instead, based on the

affidavit of ballistics expert Edward Hueske that was presented during his state habeas proceedings, Petitioner speculates the results would be "dramatically different" *if* a new forensic analysis demonstrated that he did not fire a shot. Not only is this a gross misrepresentation of the evidentiary value of Mr. Hueske's affidavit—he makes no assertions that Petitioner did not fire a weapon, only that he was not provided enough information to make such a determination—but it is also contrary to *Strickland*'s requirement that a petitioner must do more than speculate to establish that counsel's performance was deficient and fell beyond the bounds of prevailing objective professional standards. 466 U.S. at 687-89; *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . ."). Mere allegations of prejudice or the possibility of a different outcome are also not sufficient to satisfy the prejudice prong of *Strickland*. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

Moreover, Petitioner's contention that the issue of who, when, and where shots were fired was "hopelessly conflicted" is inaccurate. There was unrefuted testimony, including from Petitioner himself, that Petitioner fired shots inside the residence. 2 RR 159, 165; 3 RR 120-21; 4 RR 85, 144-46. This testimony indicated Petitioner fired two or more rounds from the living room area into the closed bedroom door where one male occupant was hiding. Petitioner testified that he fired his gun only in response to a shot that was first fired by the occupant through the door, a fact that other witnesses did not contest. 2 RR 160 (officer admitting she doesn't know who fired first); 3 RR 121; 4 RR 86, 144-46. Given this evidence, counsel would have no reason to request the opportunity to conduct ballistics testing, particularly since such testing likely would only confirm the fact that Petitioner discharged his firearm while committing a burglary and attempted aggravated assault.

13

Again, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 699. And the reasonableness of counsel's actions is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. In this case, it was wholly reasonable for counsel not to request an investigation into ballistics evidence in an attempt to show Petitioner did not fire a weapon. Accordingly, the state court's denial of this claim was not contrary to or an unreasonable application of *Strickland*. Petitioner's second allegation is therefore denied federal habeas corpus relief.

## V. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

14

## VI. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Petitioner's Motion for Discovery (DE 9) is **DENIED**;

2. Federal habeas corpus relief is **DENIED** and Petitioner Vernon Lee Travis, III's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (DE 1) is **DISMISSED WITH PREJUDICE**;

3. No Certificate of Appealability shall issue in this case; and

4. All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so ORDERED.

SIGNED this 19th day of April, 2018.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE